

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00130-CV

ILLINOIS UNION INSURANCE
COMPANY

APPELLANT

V.

SABRE HOLDINGS
CORPORATION, SITE 59.COM
LLC, TRAVELOCITY.COM LP,
TRAVELOCITY.COM LLC AND
SABRE INC.

APPELLEES

----------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 048-252770-11

----------

## MEMORANDUM OPINION[1]

----------

The question in this appeal is whether an insured properly invoked coverage for the reimbursement of defense costs under an excess insurance

---

[1]*See* Tex. R. App. P. 47.4.

policy. After a partial summary judgment ruling that the insured did properly invoke coverage under the excess policy, the trial court rendered a final judgment in the insured's favor. We affirm.

**Background**

Beginning in December 2004, appellees Sabre Holdings Corporation, Site 59.com LLC, Travelocity.com LP, Travelocity.com LLC, and Sabre Inc. (collectively, Sabre) were sued by various governmental entities for allegedly failing to fully remit hotel taxes collected from consumers. In March 2004, Sabre had obtained a primary insurance policy from American International Specialty Lines Insurance Company ("AISLIC") and an excess policy from appellant Illinois Union Insurance Company; the policy period for both policies began March 15, 2004 and ended March 15, 2005.

Sabre's insurance broker notified AISLIC in writing of the first three suits on March 11, 2005. AISLIC acknowledged that its policy provided coverage for the suits and provided periodic payments totaling $15 million, the primary policy's limit, for defense costs. On December 14, 2010, Sabre sent a letter to Illinois Union's policy representative, ACE USA. In the letter, Sabre's associate general counsel stated,

> As you know, Illinois Union and its authorized claims representative, ACE USA ("Ace"), were previously notified, pursuant to the Policy, that aggregate limits of the [AISLIC] Underlying Policy could be exhausted within a year. To date, Illinois Union and Ace have not stated whether coverage has been accepted or rejected and whether Illinois Union will comply with its obligation to step in as the primary carrier once the Underlying Policy has been exhausted.

2

. . . It is anticipated that once the AISLIC policy is exhausted, Illinois Union will continue the defense of Sabre and provide Sabre with insurance benefits until the aggregate limits of the [excess] Policy have been exhausted.

Illinois Union subsequently denied coverage under the excess policy, contending that its policy is a "follow-form policy which means that it follows all of the terms and conditions of the primary policy. As such, this claim would have to have been reported to ACE during the same policy period as it was reported to" AISLIC.

On September 10, 2012, AISLIC notified Sabre that the limits of the primary policy had been fully exhausted. Sabre sued Illinois Union seeking a declaratory judgment that it was entitled to coverage for defense costs under the Illinois Union policy; it also sought attorney's fees. Illinois Union answered, raising numerous affirmative defenses to coverage, including that Sabre did not timely report the claim. During discovery, the parties stipulated that Illinois Union's only defense to Sabre's allegation that Illinois Union has a duty to defend[2] the ongoing tax-related suits against Sabre "is that Sabre did not report AISLIC Claim No. 656-000351 to Illinois Union during the period of the Illinois Union policy."

Sabre filed a traditional motion for summary judgment seeking to have the policy construed as a matter of law. Illinois Union filed its own motion for

_____

[2]During this litigation, Sabre's claim changed from seeking a continuation of its defense to a reimbursement for defense costs expended in defending the suits.

3

summary judgment but did not file any counterclaims. The trial court denied Illinois Union's motion and granted Sabre's; in the same order, the trial court overruled both Illinois Union's and Sabre's objections to the other's summary judgment evidence.

After granting the summary judgment, the trial court allowed Sabre to amend its petition to include claims for breach of contract and violation of the Prompt Payment of Claims Act (PPA). Tex. Ins. Code Ann. §§ 542.051–.061 (West 2009 & Supp. 2014). After granting the amendment, the trial court rendered a final judgment incorporating the declaratory judgment relief it granted in the summary judgment order and also awarding Sabre damages for breach of contract and violation of the PPA. Illinois Union challenges only the underlying summary judgment rulings upon which the final judgment is based.

**Standard of Review**

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential

4

elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848; *see Myrad Props., Inc. v. Lasalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009). The reviewing court should render the judgment that the trial court should have rendered. *Mann Frankfort*, 289 S.W.3d at 848.

## Grounds for Summary Judgment

On appeal, Illinois Union challenges the summary judgment rulings for Sabre on which the remainder of the final judgment is based. Whether Sabre is entitled to recover on its breach of contract and PPA claims depends on whether it properly invoked coverage under Illinois Union's policy.

An appellant must attack every ground upon which summary judgment could have been granted to obtain a reversal. *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Columbia Lloyds Ins. Co. v. Mao*, No. 02-10-00063-CV, 2011 WL 1103814, at *7 (Tex. App.—Fort Worth Mar. 24, 2011, pet. denied) (mem. op.). Here, Sabre raised the following grounds in its summary judgment motion: (1) by its plain language, the excess policy does not require that notice be given until the primary policy's limits are almost exhausted; it does not require that notice be given at the same time as notice is required under the

5

primary policy; or (2) alternatively, the primary policy is only a claims-made, not

claims-made-and-reported, policy and Illinois Union has not and cannot show

actual prejudice from the delay between the end of the policy period and the date

Sabre gave notice.  As relief, Sabre requested that the trial court

> enter the requested declarations that:  (1) notice was timely provided by Sabre to Illinois Union; and (2) Illinois Union is required to immediately assume the defense of AISLIC Claim No. 656-000351-001[,] . . . [and grant] summary judgment on Illinois Union's affirmative defense of untimely notice because Illinois Union cannot, as a matter of law, prove it suffered prejudice as a result of any untimely notice.

Illinois Union's issues on appeal are (1) whether its policy provided

coverage on the same basis as the primary policy, which it contends is a claims-

made-and-reported policy and, if not, (2) whether any constructive notice from

Sabre excuses its late reporting, or (3) whether Sabre is required to show actual

prejudice from the late notice to defeat coverage.   Because all of Sabre's

summary judgment grounds and requested relief involve the timeliness of its

notice of claim and because Illinois Union addresses all of Sabre's arguments

regarding the timeliness of the claim in its issues on appeal, we conclude and

hold that Illinois Union has challenged all possible grounds upon which the trial

court could have granted Sabre's motion for summary judgment.[3]

---

[3]Although Illinois Union did not directly challenge the damage awards for breach of contract and violations of the PPA awarded in the final judgment, if we determine that the trial court erred by denying Illinois Union's summary judgment motion and granting Sabre's, we must reverse the entire judgment because the trial court's judgment on both of those claims is premised on the declaratory

6

## Notice Required Under Excess Policy

In its first issue, Illinois Union contends that the trial court erred by ruling for Sabre because its policy followed form to the primary policy, which is a claims-made-and-reported policy; thus, Illinois Union argues that Sabre was required to—but did not—notify *both* insurers no later than the end of the primary policy's policy period or extended reporting period in order to invoke coverage under the excess policy.

### Applicable Rules of Construction

Generally, courts construe insurance policies according to the same rules of construction that apply to contracts. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008); *Robertson v. Home State Cnty. Mut. Ins. Co.*, 348 S.W.3d 273, 277 (Tex. App.—Fort Worth 2011, pet. denied) (en banc op. on reh'g). Enforcing the parties' expressed intent is our primary concern. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) (op. on reh'g); *Robertson*, 348 S.W.3d at 277. The policy's terms are given their ordinary and generally accepted meanings unless the policy shows that the words were meant in a technical or different sense. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (op. on reh'g); *Robertson*, 348 S.W.3d at 277. If terms in the contract can be given a definite or certain legal meaning, they are not ambiguous, and the court will construe the contract

judgment relief sought by Sabre in its motion for summary judgment and awarded by the trial court in its summary judgment order.

as a matter of law. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (op. on reh'g); *Robertson*, 348 S.W.3d at 277. However, if a contract of insurance is susceptible to more than one reasonable interpretation and is, thus, ambiguous, we must resolve the uncertainty by adopting the construction that most favors the insured even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *Robertson*, 348 S.W.3d at 277. An ambiguity does not exist simply because the parties interpret a policy differently. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003); *Robertson*, 348 S.W.3d at 277.

Texas courts follow the eight corners rule in determining an insurer's duty to defend. *Ewing Const. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). Under that rule, courts look to the facts alleged within the four corners of the pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy. *Id.* We generally do not look outside the pleadings and the policy. However, with respect to documents referred to in the policy to be construed, the supreme court has recently held,

> [W]hile our inquiry must begin with the language in an insurance policy, it does not necessarily end there. In other words, we determine the scope of coverage from the language employed in the insurance policy, and if the policy directs us elsewhere, we will refer to an incorporated document to the extent required by the policy.

*In re Deepwater Horizon*, No. 13-0670, 2015 WL 674744, at *5 (Tex. Feb. 13, 2015).

In interpreting the policy, we attempt to give a reasonable meaning to all provisions rather than interpret it so that one part is inexplicable or creates surplusage. *Liberty Mut. Ins. Co. v. Am. Emp'rs Ins. Co.*, 556 S.W.2d 242, 245 (Tex. 1997); *United States Fire Ins. Co. v. Gnade*, No. 10-03-00289-CV, 2005 WL 552473, at *2 (Tex. App.—Waco Mar. 9, 2005, pet. denied) (mem. op.).

**Excess Policy's Terms**

Illinois Union argues (1) that its policy "follows form" to AISLIC's primary policy and (2) that because AISLIC's policy required Sabre to provide written notice of a claim before expiration of the policy period or extended reporting period to invoke coverage, Sabre was required to do the same under the excess policy to invoke coverage under that policy.

Some of the relevant terms of Illinois Union's policy are as follows:

- In the declarations page, "UNLESS OTHERWISE PROVIDED IN THE FOLLOWED POLICY, THIS POLICY IS A CLAIMS MADE POLICY WHICH COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD." The Declarations page also defines the primary policy as the "Followed Policy": "American

International Specialty Lines Insurance Company Policy Number: 00640972."[4]

- Under the title, "INSURING CLAUSE," the following:

  In consideration of the payment of the premium and in reliance upon all statements made in the application including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions and limitations of this policy, the Insurer agrees to provide insurance coverage to the Insureds in accordance with the terms, definitions, conditions, exclusions and limitations of the Followed Policy, except as otherwise provided herein.

  This section was amended by a Non-Follow Form endorsement, as discussed in more detail below.

- In the Definitions section, "The terms 'Claim' and 'Loss' have the same meanings in this policy as are attributed to them in the Followed Policy."

- In the section regarding any primary policies,

  This policy is subject to the . . . same terms, definitions, conditions, exclusions and limitations (except . . . as otherwise provided herein) as are contained in or as may be added to the Followed Policy . . . . In no event shall this policy grant broader coverage than would be provided by any of the Underlying Policies.

- In the same section, "As a condition precedent to coverage under this policy, the Insureds shall give to the Insurer as soon as practicable written

_____

[4]An endorsement issued after the fact defines the Followed Policy as number 6409472 issued by American International Specialty Lines Insurance Company. The number on the primary policy is listed as 640-94-72. Therefore, the policy numbers in both the original Declarations page and endorsement appear to be referring to the same AISLIC policy.

10

notice and the full particulars of . . . the exhaustion of the aggregate limit of liability of any Underlying Policy."

- Under the "GENERAL CONDITIONS" section, "Discovery Period Premium: If the Insureds elect a discovery period or extended reporting period ('Discovery Period') as set forth in the Followed Policy following the cancellation or non-renewal of this policy, the Insureds shall pay to the Insurer the additional premium set forth in Item 6 of the Declarations."

- In the same section, "Notice:  All notices under this policy shall be given as provided in the Followed Policy and shall be properly addressed to the appropriate party at the respective address as shown in the Declarations."

- Also under the "GENERAL CONDITIONS" heading, "Claim Participation: The Insurer shall have the right, but not the duty, and shall be given the opportunity to effectively associate with the Insureds in the investigation, settlement or defense of any Claim even if the Underlying Limit has not been exhausted."

- And, finally, also under the same section, "Changes and Assignment: Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this policy or estop the Insurer from asserting any right under the terms of this policy."

**Primary Policy's Terms**

Illinois Union argues that its policy, especially the notice section, incorporates all of the notice provisions in the primary policy. The relevant terms of that policy are set forth below:

- On the Declarations page, "THIS POLICY CONTAINS ONE OR MORE COVERAGE MODULES. CERTAIN LIABILITY COVERAGE PARTS OF THIS POLICY ARE LIMITED TO LIABILITY FOR CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER AS REQUIRED."

- In the Introduction of the Insuring Agreements section,

    For Coverages A and B, and all other claims made and reported coverage in this policy, solely with respect to claims first made against an insured and reported to us during the policy period or any applicable extended reporting period, and subject to the other terms, conditions, exclusions and other limitations of this policy, this policy affords the following coverage[.]

    Coverage is then defined and explained in various coverage "modules."

- In the Definitions section, "'Claim' means . . . (1) a written or oral demand for money, services, non-monetary relief or injunctive relief; or (2) a suit."

- "'Loss' means the total sum of damages and claim expenses." The definition of "Claim expenses" includes defense costs.

- Under the "NOTICE AND AUTHORITY" section, "Notice in connection with this policy shall be given in writing to us (i) in the case of claims, as provided in Paragraph 7(b) . . . ."

12

- In section 7(b)(1), "With respect to claims or circumstances, notice and all other information and documentation required to be provided under this policy should be directed to us c/o AIG Technical Services, Inc., Professional Liability Division, at our address indicated In the Declarations. To be effective, such notice must reference this policy."

- In section 7(b)(2), as amended by endorsement #5,

    For any and all coverage under this policy afforded on a claims made and reported basis:

    (a) before coverage will apply, an insured must notify us in writing of a claim made against an insured as soon as practicable after notice of such claim is reported to any personnel in your office of the General Counsel, Office of the Chief Financial Officer or risk management department;

    (b) if an insured has notified us in writing of a claim pursuant to Subparagraph 7(b)(2)(a) above, then any claim which is subsequently made against an insured and reported to the insurer alleging, arising out of, based upon or attributable to the facts alleged in the claim for which such notice has been given, or alleging any wrongful act which is the same as or related to any wrongful act alleged in the claim of which such notice has been given, shall be considered related to the first claim and made at the time such notice was given; and

    (c) if during the policy period or during an applicable extended reporting period an insured shall become aware of any circumstances which may reasonably be expected to give rise to a claim being made against an insured for a wrongful act that occurs prior to the end of the policy period, and, during the policy period or any applicable extended reporting period, an insured gives written notice to us of (i) such circumstances, (ii) the wrongful acts allegations anticipated and (iii) the reasons for anticipating such a claim, with full particulars as to dates, persons and entities involved, then any claim that is subsequently made against an insured arising out of such wrongful act or the same wrongful act or series of continuous, repeated or related wrongful acts, shall be treated as a

13

claim made against such insured and reported to us at the time such notice of such circumstances was given.

**Excess Policy Does Not Follow Form to Reporting Requirements of Primary**

Illinois Union argues that the section of its policy that states, "All notices under this policy shall be given as provided in the Followed Policy and shall be properly addressed to the appropriate party at the respective address as shown in the Declarations," means that Sabre was required to provide notice of the underlying hotel-tax suits against it to Illinois Union *in addition to* AISLIC before the expiration of the primary policy's reporting period in order for the claim to be covered by the excess policy.

According to Illinois Union, the analysis is simple: the primary policy is a claims-made-and-reported policy, and the excess policy follows form to the primary policy; therefore, coverage under the excess policy is also on a claims-made-and-reported basis, especially given the notice provision in section 7(a) of the excess policy. However, interpretation of the excess policy is more problematic due to the Non-Follow Form endorsement that was added. That endorsement amended the Insuring clause so that it states, in full, as follows:

I.   INSURING CLAUSE

In consideration of the payment of the premium and in reliance upon all statements made in the application including the information furnished in connection therewith, and subject to all terms, definitions, conditions, exclusions and limitations of this policy, the Insurer agrees to provide insurance coverage to the insureds in accordance with the **terms**, *definitions,* **conditions***, exclusions and limitations of the Followed Policy*, except as otherwise provided herein. However, the Insurer shall not provide Insurance coverage

14

to the Insureds in accordance with the **terms and conditions**, including those pertaining to Guaranteed Renewal as set forth in the endorsement *of the American International Specialty Lines Insurance Company, Policy Number 006409472*, as that coverage is provided under the American International Specialty Lines Insurance Company's Policy.  [Bold and italics emphasis added.]

We construe policies and their endorsements together unless they are so much in conflict that they cannot be reconciled.  *Plantation Pipe Line Co. v. Highlands Ins. Co.*, 444 S.W.3d 307, 311 (Tex. App.—Eastland 2014, pet. filed); *Mesa Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754 (Tex. App.—Dallas 1999, pet. denied).  The language added by the endorsement at first glance appears to render the insuring clause ambiguous.  It seemingly contradicts itself, stating that the excess policy follows form to the primary policy, yet does not follow form to the primary policy.  Thus, we must look further to determine if these two sentences can be reconciled so as not to create a nullity.

The clause could be read as referring to two different policies:  the excess policy follows form to policy number 6409472 but not policy number 006409472.  However, the only difference in the numbers is the addition of the zeroes at the beginning.  And item 8 on the Declarations page, "Schedule of Underlying Policies," which was not amended by endorsement, lists the primary policy as "American International Specialty Lines Insurance Company 006409472."  Accordingly, we do not believe this interpretation is reasonable.  *See also, supra*, note 4.

15

Upon close inspection of the two parts of the clause together, it can be discerned that three key words are not included in the nonfollow form language that are included in the follow form language: definitions, exclusions, and limitations. Thus, the insuring clause as amended by the endorsement could be reasonably interpreted to mean that the excess policy follows form to the definitions, exclusions, and limitations of the primary policy but not the terms and conditions of the primary policy.[5] Because the reporting requirements in the primary policy are more properly characterized as conditions rather than definitions, exclusions, or limitations, the amended insuring clause can be read as not incorporating the notice conditions of the primary policy. *See Love of God Holiness Temple Church v. Union Std. Ins. Co.*, 860 S.W.2d 179, 180 (Tex. App.—Texarkana 1993, writ denied).

Although this interpretation appears to conflict with other sections of the policy,[6] it is the only reasonable way to resolve the apparent conflict in the two

_____

[5]This interpretation would still provide coverage under the excess policy, which expressly incorporates the definitions of "Claim" and "Loss" in the primary policy; those definitions, along with other definitions incorporated within them, help define the scope of coverage in the primary policy.

[6]For instance, in the "UNDERLYING INSURANCE" section, the excess policy states that it is "subject to . . . the same terms, definitions, conditions, exclusions and limitations (except as regards the premium, the limits of liability, the policy period and except as otherwise provided herein) as are contained in or may be added to the Following Policy . . . . In no event shall this policy grant broader coverage than would be provided by any of the Underlying Policies." Additionally, the Discovery Reporting Period and claim participation sections appear to contemplate that Illinois Union would be given notice of claims within the primary policy's reporting period.

16

sentences of the clause. *See Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 751 (Tex. 2006) (construing seemingly conflicting parts of same clause to effect reasonable result). Accordingly, we conclude and hold that the excess policy, regardless of any apparent intent between the parties, does not follow form to the reporting requirements in the primary policy. We must therefore look to the notice provision in the excess policy itself, which Illinois Union also contends incorporates the reporting requirements in the primary policy.

**Excess Policy's Notice Provision Does Not Incorporate Primary's Reporting Requirements**

The excess policy contains a stand-alone notice provision, which states, "Notice: All notices under *this policy* shall be given as provided in the Followed Policy and shall be properly addressed to the appropriate party at the respective address as shown in the Declarations." [Emphasis added.] Only two provisions in the excess policy require the giving of notice:

> C. If during the Policy Period or any Discovery Period the terms, definitions, conditions, exclusions or limitations of the Followed Policy are changed in any manner, the Insureds shall as a condition precedent to coverage under this policy give to the Insurer written notice of the full particulars thereof as soon as practicable but in no event later than 30 days following the effective date of such change. This policy shall become subject to any such changes upon the effective date of the changes in the Followed Policy, provided that the Insureds shall pay any additional premium reasonably required by the Insurer for such changes.
>
> [the following paragraph is added, not substituted or replaced, by endorsement number 5]
>
> If the terms, definitions, conditions, exclusion or limitations of the Underlying Policies are changed in any manner during the Policy

17

Period of this policy, or differ in any respect from the binders for such Underlying Policies:

1. It is a condition precedent to coverage under this policy that the Insureds give to the Insurer written notice as soon as practicable of the full particulars thereof. If such written notice is not provided, such changes shall not apply to this Policy. If such written notice is provided,

2. Such changes shall apply to this policy upon the effective date of the changes to the Underlying Policy(ies) only if the Insureds pay any reasonable additional premium required by the Insurer.

D. As a condition precedent to coverage under this policy, the Insureds shall give to the Insurer as soon as practicable written notice and the full particulars of (i) the exhaustion of the aggregate limit of liability of any Underlying Policy, (ii) any Underlying Policy not being maintained in full effect during the Policy Period, or (iii) an insurer of any Underlying Policy becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

To construe both of these provisions as requiring concurrent notice of such circumstances to AISLIC would not be reasonable because these specific sections deal with circumstances of which the primary insurer would already be aware: changes to its policy, receivership, and exhaustion of the underlying limits. Section C is not at issue here because there is no evidence that any changes were made to the primary policy that required notice. In addition, subsections (ii) and (iii) of Section D were not triggered. The only notice requirement under section D triggered in this case is under subsection (i) regarding exhaustion of the primary policy's limits. There is no corresponding notice provision in the primary policy.

Sabre argued in the trial court, and argues on appeal, that the notice provisions in section C and D are fact-specific provisions which, according to the rules of construction of insurance policies, control over more general provisions like the one Illinois Union contends incorporates the claims-made-and-reported notice provisions of the primary policy. We agree that Sabre's interpretation is reasonable. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 815 (Tex. 2012) ("[W]e have long treated specific provisions as exceptions to general provisions."); *Tarrant Cnty. Ice Sports, Inc. v. Equitable Gen. Life Ins. Co. of Okla.*, 662 S.W.2d 129, 132 (Tex. App.—Fort Worth 1983, writ ref'd, n.r.e.). The general notice provision in the excess policy requiring that notices under the excess policy be given as provided in the primary policy could not apply to the specific provision regarding exhaustion of limits when there is no corresponding provision in the primary policy. *See Westchester Fire Ins. Co. v. Stewart & Stevenson Servs., Inc.*, 31 S.W.3d 654, 658–59 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (looking to entire excess policy in determining that some parts followed form to primary policy and some did not).

Therefore, we overrule Illinois Union's first issue. Because the remainder of its issues are contingent upon this court's sustaining its first issue, we need not address the remaining issues. *See* Tex. R. App. P. 47.1.

## Conclusion

Having overruled Illinois Union's dispositive issue, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DELIVERED:  June 25, 2015